UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CAROLYN FERLISI,

          Plaintiff,

v.                                                Case No.  5:07-cv-210-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

          Defendant.
_____/

## **ORDER**

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 7) and both parties have filed briefs outlining their respective positions.  (Docs. 10 & 11.)  For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

## **I.  PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits (R. 44-46) claiming a disability onset date of October 31, 2001.  Plaintiff's date last insured was March 2003, so Plaintiff must establish disability on or before that date to receive benefits.  Plaintiff's applications were denied initially (R. 30-32), and upon reconsideration. (R. 35-37.)  Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 10.)  ALJ John D. Henson conducted Plaintiff's

administrative hearing on March 17, 2006. (R. 281-96.) At the hearing, Plaintiff was represented by legal counsel, Danialle Riggins. (R. 174-75.) The ALJ issued a decision unfavorable to Plaintiff on June 5, 2006. (R. 14-19.) The Appeals Council denied Plaintiff's request for review. (R. 4-7.) Plaintiff then filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on April 19, 1946 and was 59 years old at the time of the hearing. (R. 283-84.)    Plaintiff has a high school education (R. 64) and has worked as an administrative assistant and data entry clerk. (R. 67-69, 288.) Plaintiff contends that as of October 31, 2001, she was no longer able to work due to lower back pain and weakness in her lower extremities. (R. 59.)

The medical records dated December 12, 1998, show that Plaintiff tripped and fell down steps resulting in an oblique fracture of the left distal fibula. (R. 99-107.) Plaintiff reported a ground level fall on October 15, 2003. (R. 110.)   On April 13, 2004, Plaintiff reported pain in both legs and swelling of her feet; it was reported that Plaintiff had bilateral

---

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

lower extremity edema. (R. 109.)  A bilateral lower extremity venous doppler ultrasound performed on April 23, 2004, showed no evidence of thrombus or occlusion in either lower extremity. (R. 115.)  On June 8, 2004, Plaintiff reported leg discomfort and weakness. (R. 108.)

On June 17, 2004, Alfredo L. Jacome, M.D. performed a consultative neurological examination. (R. 214-23.)  Dr. Jacome noted that Plaintiff had a six to nine month history of worsening imbalance which has resulted in a few falls.  (R. 214.)  Dr. Jacome's impression was mild lumbar polyradiculopathy.  (R. 215.)  Dr. Jacome ordered a lumbar spine MRI and found "no immediate need for pharmacological treatments."  (Id.)   The lumbar spine MRI performed on June 28, 2004 showed spondylolisthesis at L4-5 and mild retrolisthesis of L3 on L4, mild compressive deformity at T11, mild spinal stenosis at L3-L4 from disc bulging, borderline spinal stenosis at L2-L3, and bilateral neural foraminal narrowing from L2-L3 through L4-L5.  (R. 212.)

From July 2004 through October 2004, Plaintiff attended physical therapy.  (R. 126-86.)  She was discharged on October 14, 2004 and it was noted that she had 60% improvement, with significant gains in lower extremity strength and flexibility.  (R. 126-28.) In January 2005, Plaintiff joined the Villages Wellness Center's Medfit program.  (R. 187-92.)  On March 8, 2005, the Medfit Coordinator noted marked improvement in Plaintiff's ability to ambulate.  (R. 187.)

On August 8, 2004, non-examining state agency physician, Violet A. Stone, M.D. filled out a physical residual functional capacity ("RFC") assessment and found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; stand and walk for about 6 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday;

and push and pull without limitation.  (R. 118-25.)  Stone found that Plaintiff was limited to occasional stooping and crawling and should avoid concentrated exposure to hazards.  (R. 120-22.)  In reaching these conclusions, Stone noted that Plaintiff had low back pain radiating to the lower extremities and imbalance in the last 6-9 months. (R. 119.)

After the hearing, Plaintiff submitted additional medical records to the Appeals Council from Alfred Bonati, M.D. dated January 16-17, 2006. (R. 7, 263-80.) Plaintiff reported low back pain and right hand weakness.  Based on his examination and review of an MRI and X-rays, Dr. Bonati's impression was positive for radiculopathy at the bilateral L4 and L5 due to her significant hip and quad weakness; spondylolisthesis, L5/S1; foraminal narrowing, L4/L5 and L5/S1; degenerative facets, L4/L5 and L5/S1; bulging disc, L3/L4, L4/L5 and L5/S1; degenerative disc disease, L4/L5; stenosis, L3/L4, L4/L5 and L5/S1; and nerve impingement, L3/L4, L4/L5 and L5/S1.  Dr. Bonati recommended surgery and physical therapy.

At the hearing on March 17, 2006, Plaintiff was first questioned by the ALJ. Plaintiff testified that around March 2003 she was having problems with her legs, right hand and lower back.  (R. 284.)  Plaintiff testified that during the 2003 period she was treated by Dr. Anderson on a few occasions, who advised her to exercise and use hot and cold compresses.  (R. 284-85.)   Plaintiff testified that Dr. Anderson did not give her any diagnosis, that she was not taking any medication and that she had not been hospitalized during the year.  (R. 285.)   Plaintiff testified that presently she was having problems with her lower back, legs, neck and hand.  (R. 285.)  Plaintiff testified that she is using a wheelchair and that she needs a walker to walk.  (R. 285-86.)  Plaintiff

testified that she has been diagnosed with stenosis of the lumbar back and neck and that her spine was "full of arthritis."  She testified that she is treated by Dr. Troy, once every three or four months and that she takes Celbrex, a muscle relaxant and Tylenol for pain.  (R. 286.)   Plaintiff testified that in 2003 she could do a little cooking and cleaning but no gardening or yard work.  (R. 287.)  She testified that she stopped driving a car in the middle of 2003 and that she had no hobbies at that time.  (Id.)  Plaintiff further testified that in March 2003 she could have lifted five pounds, stood for five or ten minutes, walked for three minutes and sat for twenty minutes.  (R. 288-89.)

     Plaintiff's counsel, Ms. Riggins further questioned Plaintiff.  Plaintiff testified that she had fallen a few times prior to 2003, that she had frequent swelling of her feet, and stiffness if she sat, stood or lay down too long. (R. 289-91.)  Plaintiff also testified that she was let go from her last data entry job because she could not punch the keys for the required amount of time or lift the trays.  (R. 291.)  Ms. Riggins questioned Plaintiff regarding a break in her treatment.  (R. 292.)  Plaintiff testified that she had a break in treatment because she moved to Florida but that she started to see Dr. Burgess due to heaviness in her legs.  (R. 292.)  She testified that she could not do a sit down job now because she cannot write. (R. 293).  Plaintiff further testified that she started physical therapy in 2004 and that it improved her symptoms a little bit but that she is no longer in physical therapy.  (R. 293-94.)  Plaintiff testified that she is now a part of the Medfit program. (R. 294.)   Plaintiff testified that no doctor has suggested surgery. (R. 294.)

     The ALJ determined that claimant suffers from degenerative disc disease of the lumbar spine.  (R. 16.)   However, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.  (Id.)

The ALJ then found that Plaintiff retained the RFC for essentially a full range of light work.  (R. 20.)  Specifically, the ALJ found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for 6 hours in an 8-hour day; push and pull without limitation; but only occasionally stoop and crouch due to Plaintiff's back pain and avoid exposure to hazards.  (Id.)  The ALJ concluded that Plaintiff was not disabled because she could perform her past relevant work as an administrative assistant and data entry clerk.  (R. 18.)

## IV.  **DISCUSSION**

Plaintiff raises only one issue on appeal – i.e., that the ALJ failed to fully and fairly develop the record by not giving Plaintiff a fair and adequate hearing. It is well-settled that an ALJ has a basic obligation to fully and fairly develop the record.[22]  This obligation exists whether or not a claimant is represented by counsel.[23] As a hearing is non-adversarial in nature,[24] the duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper

---

[22] See Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[23] Zaldivar, 81 F. Supp 2d at 1359.

[24] Id.

evaluation of the evidence.[25]  The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.[26]

In the instant case, Plaintiff argues that almost all the medical evidence submitted was dated after Plaintiff's date last insured (March 31, 2003) and thus, the ALJ erred by not obtaining additional information.  Conspicuously absent from Plaintiff's argument is the identification of what information or even what type of information the ALJ should have obtained.  Moreover, before the hearing, Plaintiff's counsel, Ms. Riggins submitted additional evidence for the file and briefly questioned Plaintiff at the hearing regarding her condition during the relevant period.  At no point did Ms. Riggins raise any issue regarding the sufficiency of the medical evidence, nor did she request additional time to submit evidence.

Moreover, in reaching his conclusion that Plaintiff was not disabled prior to March 31, 2003, the ALJ relied on several pieces of evidence.  (R. 18.)  First, the ALJ found Plaintiff credible to the extent that she experienced some difficulty with her lower back, legs and hand prior to her date last insured.  Second, the ALJ noted that the medical evidence showed only mild to minimal findings prior to March 31, 2003 and he attached great weight to the opinion of Dr. Stone because it was supported by the evidence.  Finally, the ALJ also explained that on June 17, 2004, Dr. Jacome stated that Plaintiff had a six to nine month history of worsening balance and "[t]his would place the onset of the claimant's symptoms at approximately September 2003, a date subsequent to her date last insured."

---

[25] See Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[26] See Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984.)

Accordingly, because the record contained sufficient evidence for the ALJ to make an informed decision, he was not required to obtain additional information. Indeed, the fact that Plaintiff did not obtain medical treatment prior to March 2003 for lower back pain, lower extremity weakness and right hand weakness offers further support for the ALJ's conclusion that Plaintiff's condition was not as bad as she suggested. Finally, contrary to Plaintiff's suggestion, the duration of the hearing, in and of itself, does not provide a basis for reversal, particularly where, as here, the Plaintiff was questioned by her own attorney and there was no request by the Plaintiff to submit additional information to the ALJ after the hearing and before he issued his decision.

## V. **CONCLUSION**

In view of the foregoing, the decision of the Commissioner is due to be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter final judgment consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 24, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel